PUERTO RICO WATER RESOURCES AUTHORITY, ETC., Appellant, *v.* REGISTRAR OF PROPERTY OF UTUADO, Respondent.

No. 1256. Submitted November 7, 1949.—Decided March 17, 1950.

*Gabriel Guerra Mondragón, José A. Vila Ruiz, Antonio M. Bird, and C. Domínguez Rubio,* for appellant. The Registrar appeared by brief.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

Florentino González Morales, married to Antonia Regalada Vargas Cruz, and Juan González Morales, married to Dionisia Vargas Cruz, acquired and recorded in their favor the common ownership of two undivided properties of 33

and 27 cuerdas, respectively. By deed No. 2 executed on January 23, 1933 before Notary Luis Pérez Matos in which only Florentino and Juan, who had remarried, appeared, they terminated the community. existing between them, the farm of 33 cuerdas being awarded to Florentino and the 27-cuerda farm to Juan. Said deed, as to the 33-cuerda farm, was recorded in Florentino González Morales' name [1] in the Registry of Property of Utuado but at that time the registration as to the 27-cuerda farm belonging to Juan González Morales and his wife was not requested.

The Water Resources Authority, appellant herein, who had acquired by purchase the 27-cuerda farm, in order to record it in its name, sought admission to record of deed No. 2, *supra*, in the name of Juan González Morales in order to record it later on, by virtue of deed No. 149 of September 4, 1943, on partition of property, in the name of the heirs of the latter's wife who had not appeared when deed No. 2 for the dissolution of the community was executed since she had died prior to its execution.

When copy of deed No. 2 awarding to Juan the 27-cuerda farm and which served as a basis to record the other 33-cuerda farm belonging to Florentino, was presented to the Registrar, the latter denied the recordation sought by virtue of the following note:

."Record of the foregoing document is denied, which document is a copy of deed No. 2 executed in Utuado on January 23, 1933, before Notary Luis Pérez Matos, after examining other complementary documents and with respect to the only farm whose recordation was sought because of the following incurable defects: FIRST: because Antonia Regalada Vargas Cruz, wife of Florentino González Morales, did not appear or give her consent to the division of the common property although she. was a co-owner of the properties to be partitioned and which were acquired during the community partnership; SECOND: because the

---

[1] The documents before us do not disclose whether it was also recorded in his wife's name.

heirs of the decedent, Dionisia Vargas Cruz, late wife of Juan González Morales, likewise failed to appear or give their consent to the division of the common property, although they were in such capacity, co-owners also of the two properties subject to partition and which were acquired during said community partnership; THIRD: because the lack of consent of such interested parties vitiate the contract for the division of the community rendering it null and void *ab initio;* FOURTH: because in view of all this the execution of the deed of partition attached as a complement can·not operate as an implied confirmation or ratification of that contract for the division of the community which did not meet the requisites specified in § 1262 of the Civil Code in force, namely, those contained in § 1213 of the same Code. In lieu thereof, a cautionary notice for the legal term of 120 days has been entered..."[1a]

Feeling aggrieved, appellant assigns as errors committed by the Registrar the grounds appearing in his note of denial.

Appellant's contention with respect to the first ground set forth in the decision of the Registrar is to the effect that since a previous Registrar had classified and recorded a copy of deed No. 2 with respect to the 33-cuerda farm awarded to Florentino González, despite the fact that the latter's wife had not appeared, the authority of the present Registrar "does not extend to the point of reclassifying the same document as to the defects therein in regard to the other farm awarded thereby to Juan, nor with respect to the legal validity of the contract involved in such deed, and that he must be governed and ruled by his predecessor's action."

---

[1a] In order to overcome the objections of the Registrar, appellant submitted to him the following documents: deed No. 2 for the division of the community; deed No. 149 for the partition of property; a certificate of the Registrar of Property of Utuado dated July 3, 1947, with respect to the recordation of the farm in the name of the heirs of Florentino; a certificate of a previous Registrar regarding the admission to record in the Registry of Property of Utuado of the 33-cuerda farm; a copy of the deed by which Florentino's widow and his heirs sell to the Water Resources Authority a parcel of land of 4.56 cuerdas they segregated from the 33-cuerda farm. After examining these documents the Registrar denied their recordation on the same grounds copied above.

Respondent maintains that he is not reclassifying the deed as to the recorded property, which he can not do pursuant to the law and the decisions; that he has only passed upon the validity of deed No. 2 as if it had never been presented to the Registry with respect to the 27-cuerda farm now sought to be recorded.

Two are the questions to be decided herein, to wit: first, whether deed No. 2 for the division of the community as to the 33-cuerda farm having been recorded by a previous Registrar in the Registry of Property of Utuado, the present Registrar is bound by such recordation to such an extent that he can not reclassify said deed and deny its admission to record as to the other 27-cuerda farm, and second, whether the complementary documents presented to the Registrar show that the heirs of Juan's wife ratified the division of the community accomplished by him.

It is well settled that in classifying, under the authority vested by § 18 of the Mortgage Law,[2] deeds presented for recordation, the registrars are not authorized to determine the legality of entries made by their predecessors. *Rosado* v. *Registrar*, 68 P.R.R. 552, and cases cited at page 557. This is not, however, the situation in the instant case, for the respondent Registrar has not refused to record the document with respect to the 27 cuerdas by challenging the legality of the previous recordation in connection with the 33-cuerda farm. He has only reclassified the document with respect to the unrecorded 27 cuerdas. Appellant maintains that pursu-

---

[2] Article 18 of the Mortgage Law provides:

"Registrars shall, under their responsibility, determine the legality of the instruments under which record is requested, and the capacity of the parties thereto, upon the facts that appear from said instruments themselves. .

"They shall likewise, under their responsibility, pass on all documents issued by judicial authorities for the sole purpose of admitting, suspending or refusing their admission to record or entry.

"The only remedies against a decision suspending or refusing to admit to record or to enter a cautionary notice shall be such as are provided for in this law, and judges and courts can not otherwise compel registrars to make records or entries by virtue of judicial documents."

ant to *Gerena* v. *Registrar of Humacao*, 26 P.R.R. 79, after the recording of a deed of partition of property in regard to certain awards, the document·can not be reviewed by another Registrar and its admission to record in the same registry can not be denied as to the remaining awards for reasons which necessarily had to be considered when making the previous record.

It was in effect so decided, but erroneously, we think. To support said conclusion three decisions of the General Directorate of Registries of Spain, construing § 18 of the Mortgage Law, dated January 16, 1882, January 21, 1897, and October 17, 1898, respectively, were cited, all of them to the effect that the authority granted to Registrars to inquire into the legality of deeds "refers only and exclusively to unrecorded documents or which for the first time are presented in the registry for recordation." However, these decisions do not have the scope ascribed to them in *Gerena* v. *Registrar, supra*, since, as correctly indicated by the respondent Registrar, the General Directorate of Registries of Spain itself, in several subsequent decisions (but prior to the year 1918 in which the *Gerena* case was decided) made clear their scope. Thus, in the decision of June 28, 1907, General Directorate of Registries, Year Book 1907, pp. 286–7, it was held that:

"Whereas, with respect to the authority of the Registrar of Sabadell to reclassify the deed involved herein, notwithstanding that it had been already recorded in the Registry of Tarrasa, of which the former was part, that § 18 of the Mortgage Law grants to registrars of property absolute power to review titles sought to be recorded, and that although in the aforesaid Decisions it is declared that once recorded they can not be reclassified in the same registry, *this must be understood with regard to what, as appears in the title, has been the object of recordation, but not with respect to other extremes, which, although embodied therein have not been classified,* for which reason, since the deed had not been recorded as to the right contained in clause 7th, undoubtedly the Registrar of Sabadell could and should have determined whether or not such right was recordable when its registration was sought;" (Italics ours.)

And in the decision of May 7, 1907, *op. cit.*, p. 259:

"Whereas, since the award of the property made to Manuel Martínez Monedero in the partition of the inheritance of his predecessors was not recorded, the Registrar's authority to review it pursuant to § 18 of the Mortgage Law is evident, *it being no obstacle therefor that in the same registry there be recorded other awards verified in said deed of partition, which would be the only ones which, because they were already recorded, he could not reclassify;*" (Italics ours.)

Morrel y Terry, commenting § 18, *supra*, cites these and other decisions saying:

"Classification is *an obligation* rather than a power imposed on the Registrar in order that only acts which are valid according to law appear in the registry. The Registrar can in no way excuse himself from this obligation because the documents have been already classified in another registry (Decision of June 28, 1907), *or even in the same one with respect to rights not previously recorded* (Decision of May 7 of the same year), *for the fact that a previous classification existed does not deprive one of the right nor excuse one from the duty to reclassify* (Decisions of May 27 and July 20, 1902). . . ." (Italics ours.) *Comentarios a la Legislación Hipotecaria*, Vol. 2, p. 238.

And on page 244:

"With respect to the documents presented for recordation we have said *that the registrar may pass upon them several times,* if it were possible, for it is clear that once recorded with respect *to all of the properties or rights,* a new classification does not lie; but they may be passed upon when *something is left unrecorded,* and when the recordation has been previously suspended or denied and a different classification is deemed proper. (Decisions of May 27 and July 20, 1902, May 7, and June 28, 1907.)" (Italics ours.)

But the fact remains that, despite the decision in *Gerena* v. *Registrar*, *supra*, said case was impliedly overruled by our decision in *López* v. *Registrar*, 58 P.R.R. 1, in which applying the same doctrine established in the decisions of the General Directorate of May 7, 1907 and June 28, 1907, even though not cited in the opinion, we decided the same question raised

in the *Gerena* case in a different manner. In both cases the award made to an heir was sought to be recorded at a time when other awards listed in the same document had been already recorded, the Registrar having denied the second recordation. In *Gerena* v. *Registrar*, we said that it could not be done. In *López* v. *Registrar*, *supra*, we decided the opposite, saying:

"The registrar is responsible for his own classifications and he could not excuse himself for an error committed by him alleging that he accepted as correct an erroneous classification made by his predecessor when effecting a previous recording. See Morrell y Terry, volume 2, page 238."

*Gerena* v. *Registrar*, *supra*, should be considered expressly overruled. Since the Registrar is empowered to reclassify deed No. 2, *supra*, insofar as the 27-cuerda farm is concerned which had not been recorded in the Registry, we pass on to consider whether or not the Registrar erred in declaring it void and refusing to record it.

 It is an admitted and undisputed fact that in deed No. 2 for the division of the community only Florentino and Juan González appeared, despite the fact that the former's wife, Regalada Vargas Cruz was living, and that there were eight children of the latter's marriage with his wife Dionisia Vargas Cruz who had died three years previously. It can not be disputed either that since the division of the community and the award of the properties thereof to the different co-owners was an act of conveyance of title— 3 Manresa, *Comentarios al Código Civil Español*, p. 522–527 —in order that the deed of partition be recordable in the registry of property it is an indispensable requisite according to Manresa, in commenting § 400 of the Spanish Civil Code equivalent to our 334[3] "that all persons holding an interest

---

[3] The first paragraph of § 334 provides:

"No part-owner shall be obliged to remain a part to the common ownership. Each of them may, at any time, demand the division of the thing held in common."

appear at the execution of the partition, without anyone in particular being entitled to exercise acts of ownership over the partitioned property, without the previous recordation of the division. (Decisions of September 10, 1864, November 19, 1889 and April 15, 1893.)" *Op. cit.* p. 523. And at p. 524 he says:

"Certain doubts have arisen to the effect that the decisions on mortgage proceedings have demanded (Decisions of September 10, 1864 and November 19, 1889) the appearance of *all the participants* at the execution of the deed of partition, which in another instance, *suffers from a vice invalidating it and rendering it nonrecordable,* as categorically affirmed by the last of the two Decisions cited." (Second italics ours.)

In Odriozola, *Diccionario de Jurisprudencia Hipotecaria de España,* p. 352, the decision of November 26, 1875, is cited and it is said:

- "Whichever might be the doctrine prevailing over the juridical nature of the acts of partition of the thing held in common, whether considered as conveyances of title of each one of the portions awarded to the co-owners, or classified as declaratory acts of ownership over those same portions, it is evident that such acts of partition should be performed *by all the co-owners,* according to the Registry, or by their lawful representatives or *assignees,* such character duly verified in these cases, *in order that such acts be valid and may be recorded in the Registry of property."* (Italics ours.)

Hence, we confront the fact that in deed No. 2, *supra,* Juan González Morales upon appearing, stated as follows:

"Second:—Juan González Morales states now that his first wife, Dionisia Vargas Cruz, died intestate in this same city of Utuado on December first, nineteen hundred and thirty, leaving of her only marriage with the deponent the following children: Juana, Josefa, Agueda, Bernabela, Francisca, Hipólito, Pedro, and Ramón."

It is not said whether those eight children were minors or of legal age in 1933 when said deed was executed. If all of them were minors, the father could, without previous.

judicial authorization, proceed to the division of the community. However, since in that deed no award equivalent to a specific alienation of the interest of the minors was made, judicial intervention was not necessary.[4] *Sánchez v. Registrar of Property*, 21 P.R.R. 453; *Martínez et al. v. The Registrar of Caguas*, 23 P.R.R. 330; *Burset v. Registrar*, 49 P.R.R. 47; *Costa v. Piazza*, 51 P.R.R. 667; *Aponte v. Registrar*, 56 P.R.R. 801; *West India Oil Co. (P. R.) v. Blanch*, 57 P.R.R. 580, and, consequently, the deed would be valid. If the eight children of Juan González, or some of them, were of legal age when the deed was executed in 1933, it is obvious that their appearance therein was necessary and indispensable and that the father coud not, by himself, appear and make the division of the community with respect to properties belonging to the community partnership, half of which belonged to his children by inheritance from their mother.

 Appellant maintains, however, that from the complementary documents presented to the Registrar with deed No. 2 it appears that all parties holding an interest confirmed or ratified the division of the community made by said deed and that since the deed is not void in the sense that it is non-existent, but merely voidable, said ratification is sufficient to compel the Registrar to record it as to the 27-cuerda farm.

The complementary documents show that ten years after the execution of deed No. 2, that is, on September 4, 1943, deed No. 149 was executed before Notary Luis Pérez Matos for the partition of property, at which there appeared Juan González Morales and his eight children, all of full age, who had been declared heirs of their mother, Dionisia, and proceeded to the partition of the 27-cuerda farm acquired, as set forth, by deed No. 2 for the division of the community executed on January 23, 1933, half of said farm—13½ cuerdas—being awarded as conjugal property to Juan and the

---

[4] In that case previous judicial authorization would be necessary. *Milán v. Registrar,* 41 P.R.R. 98; *Mercado v. Registrar,* 41 P.R.R. 521; *Burset v. Registrar,* 49 P.R.R. 47.

remaining half of the farm being divided in small parcels among the eight children.

Certain other documents show, also, that the 33-cuerda farm awarded to Florentino González and recorded in his name, was recorded upon his death in the name of his heirs, namely, his widow, Antonia Regalada Vargas, and his five children, all of full age, and that all of them in 1948 sold by public deed to the appellant Authority 4.056 cuerdas of said farm, said sale having been recorded in the registry. The validity of the entries made in the Registry of the 33-cuerda farm is not before our consideration in this appeal since the Registrar correctly holds that he could not reclassify deed No. 2 insofar as said property is concerned.

We think that the appellant is right and that although deed No. 2 suffered from the afore-mentioned defects which rendered it voidable, since its nullity was not requested by any of the interested parties as to the 27-cuerda farm and, on the contrary, all of them, being of age, subsequently accepted the awards made in said deed and even disposed of part of the farms,[5] said contract of division has been ratified.

We decided in *García* v. *Central Alianza*, 69 P.R.R. 855, citing from the headnote that:

"Supposing that the partition of a property in common in which a minor had an interest be void, if upon the latter reaching her majority she sells the parcel of land which was awarded to her in the aforesaid partition, she thereby ratifies the partition of the property among the co-owners."

And see *Campos* v. *Central Cambalache*, 64 P.R.R. 57, affirmed in 157 F.2d 43 (C.C.A. 1, 1946), certiorari denied in 330 U.S. 842.

The decision appealed from will be reversed and the recordation sought ordered.

---

[5] It is an admitted fact that the appellant desires to record deed No. 2 with respect to the 27 cuerdas because she has acquired some parcels thereof.